## Ukrainian Finance Corp. v. Borachevsky et al.

*J. M. Doodan*, for plaintiff.
*Croskey & Edwards*, for defendants.

LEVINTHAL, J., June 15, 1940.—This case is before us upon a petition and rule to open a judgment, entered upon a note for $150 executed by defendants in favor of plaintiff, Ukrainian Finance Corporation. The note is dated April 13, 1928, and called for the payment of interest at the rate of 3½ percent per month in accordance with the provisions of the Small Loans Act in effect at that time: Act of June 17, 1915, P. L. 1012, as amended by the Act of June 4, 1919, P. L. 375. Plaintiff was a duly-licensed broker under the provisions of that act from January 16, 1926, to June 1, 1935, when it went into voluntary liquidation. It has not held a license since that time. Fifty dollars was paid on account of the loan on January 21, 1932, but no other payments of principal or interest appear to have been made. Judgment was, therefore, entered upon the note on May 9, 1938, and damages were assessed as follows on April 20, 1940:

"Principal ........................... 150.00
Interest from 4/13/28 to 1/21/32 @
2½% per month (credit payment of
$50) ............................. 168.75
Interest on $100 from 1/21/32 to
4/20/40 @ 2½% per month...... 247.50
Attorney's commission .............. 10.00
————
$576.25"

The legislature, by the Act of May 28, 1937, P. L. 989, 7 PS §751, amending the Small Loans Act, supra, made more stringent the limitations imposed upon small loan brokers. Defendants rely upon several of the provisions of the amended act to avoid the judgment in question.

■ Section 1 (*a*) of the Act of 1937 now provides (7 PS §752) : "When a license is not renewed . . . the licensee . . . shall also forfeit the right to collect interest in excess of 6% per annum on outstanding loans."

Defendants insist that plaintiff's failure to renew its license after June 1, 1935, deprived plaintiff of its right to collect the higher rate of interest agreed upon by the parties. There are at least two reasons why we cannot concur with that contention.

Interest on small loans is invariably payable monthly. If, prior to the time the finance company failed to renew its license, the stipulated interest had been paid as it fell due, certainly the lender could not be compelled to return those payments when it subsequently was forced to go out of businesss. By the same token, accrued but unpaid interest ought not to be forfeited. The clause in controversy contemplates only interest to be earned in the future. Its proper construction, we believe, merely prohibits the charging of more than six percent per annum on outstanding loans subsequent to the expiration of the licensee's privilege.

If we were to construe the clause as defendants do, it would still be inapplicable to this case. For plaintiff's last license expired on June 1, 1935, and the provision relied upon by defendants was not incorporated into the act until 1937. A forfeiture of accrued interest would be a most severe penalty and could not be extended to apply to a broker who failed to renew his license two years before the penalty for such failure appeared upon the statute books.

In the assessment of damages filed on April 20, 1940, however, plaintiff has charged interest at the excess rate, not only until June 1, 1935, but up to the time the assess-

ment was filed. The privilege of charging interest in excess of the legal rate of six percent per annum is conferred only upon those who comply with the regulatory measures imposed by the legislature, and exists only so long as the lender remains a duly-licensed broker. Though no express provision to that effect appeared in the 1915 act, it necessarily follows that the broker who fails to renew his license must be content with the legal rate of interest upon loans still unpaid at that time. Plaintiff has conceded that much by its offer to amend the assessment of damages as follows:

"Principal ........................$150.00
Interest from 4/13/28 to 1/21/32 @
2½% per month (1/21/32 Credit
payment $50) ....................  168.75
Interest on $100 from 1/21/32 to
7/1/35 @ 2½% per month........  102.50
Interest on $100 from 7/1/35 to 4/20/-
40 @ 6% per annum..............   28.50
                                 ————
Total........................$449.75"

The offer to reassess damages as above also disposes of defendants' objection to the $10 attorney's commission, for that item has likewise been omitted from the revised computation.

■ Defendants further contend that plaintiff, under the act, is permitted to charge interest of 2½ per cent per month only for a period of 18 months. The Act of 1937 so provides: 7 PS §755. But there was no such limitation in the statute at the time this contract was made. In the absence of express language, we cannot construe the Act of 1937 so as to give retroactive effect to that provision: Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 56, 46 PS §556. Nor is the effect of the new provision on existing loans relevant here since plaintiff has abandoned its claim to the higher rate of interest after June 1, 1935. The right to interest accrued at that time, however, cannot be taken away by

legislative enactment passed several years after the right thereto vested in plaintiff.

■ Defendants allege that the debt is now totally unenforcible because plaintiff has in several ways violated the Small Loans Act. As support therefor, they cite section 6(c) of the 1937 act, 7 PS §759(c), providing that a borrower who is charged more than six percent interest per year, otherwise than as provided for in the act, shall be relieved from repaying either interest or principal. That section, however, is concerned only with loans made by nonlicensed lenders. It has no application to one who, on the date of the contract, held a valid license. Licensees who charge excessive rates are penalized in a different fashion. By section 1, 7 PS §755, a licensee who *receives* more than the maximum permitted by the act only loses the right to collect interest in excess of six percent per annum; his right to principal and legal interest is not altered. If plaintiff had been guilty of violations, this would be the applicable penalty. However, plaintiff has not charged a rate of interest higher than that permitted by statute, and it has not even *received* any payments of that amount. It is true that the original assessment of damages included a $10 attorney's commission but at the same time interest was computed at the rate of 2½ percent per month instead of the maximum 3½ percent provided for in the note. Since this $10 fee was not in addition to the rate of interest specified by the contract itself, it is difficult to see in what respect the act has been violated. See Commonwealth v. Pennsylvania Loan Corp., 127 Pa. Superior Ct. 253 (1937). Furthermore, the item was never paid, and plaintiff, in its offered amendment, has removed it from the assessment of damages.

One item deserves further mention. A credit payment of $50 was made on January 21, 1932, which, we gather from the subsequent interest computations, was apparently credited on account of the principal of the debt. The principal appearing on both the original and amended

assessment of damages, however, is $150. Obviously, this should be reduced to $100.

Since the facts are not in dispute and since plaintiff has indicated its willingness to reassess damages along the lines herein suggested, it is unnecessary that the judgment be opened. The rule is, therefore, discharged provided the assessment of damages be so modified.